UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SCHINDLER,<br><br>    Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>    Defendants. | Case No. 21-cv-02984-JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 34 |

Now before the Court for consideration is the motion to dismiss filed by Defendants Contra Costa County (the "County"), Department of Children and Family Services ("DCFS") Director Kathy Marsh ("Marsh"), and DCFS social worker Anna Jauregui ("Jauregui") (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court GRANTS Defendants' motion to dismiss with leave to amend.

## BACKGROUND

This action arises out of state juvenile dependency proceedings, which resulted in the termination of Plaintiff Lisa Schindler's ("Plaintiff's") parental rights over her daughter A.S. On April 4, 2017, DCFS social worker Ann Butler filed the underlying juvenile dependency petition in Contra Costa County Superior Court against Plaintiff alleging that Plaintiff was "responsible for A.S.'s failure to thrive, for missing an appointment with a nutritionist, and for over-medicating A.S." (Dkt. No. 26, FAC ¶ 37.) Plaintiff alleges that Butler's juvenile dependency petition did not include the previous recommendations of another DCFS social worker, Abe Godir. (*Id.* ¶ 43.) Moreover, Plaintiff alleges that DCFS never disclosed Godir's recommendations to the state court,

1    which suggested that "Plaintiff continue medical and psychiatric treatments for A.S. for at least six
2    months" following her failed treatment. (*Id.* ¶¶ 28, 44.)
3         At a hearing on the petition, DCFS requested custody of A.S, which the juvenile court
4    granted. (*Id.* ¶ 46.) Contra Costa County Judge Rebecca Hardie found that Plaintiff willfully or
5    negligently failed to provide A.S. with adequate medical treatment. (*Id.* ¶ 60.) Plaintiff alleges
6    that DCFS did not fully inform Judge Hardie of A.S.'s actual conditions, which led her to accept
7    DCFS's request to place A.S. in DCFS custody. (*Id.* ¶ 59.) Plaintiff contends that DCFS similarly
8    deceived Judge Hardie on previous occasions. (*Id.* ¶¶ 61-63.)
9         DCFS initially placed A.S. in a foster home, but eventually removed A.S. from her foster
10   home and placed her with Plaintiff's brother on December 11, 2017. (*Id.* ¶¶ 50, 70-71, 75.)
11   Plaintiff's brother took care of A.S. for months and helped improve her health. (*Id.* ¶ 74.)
12   Plaintiff alleges she was not permitted to communicate with her brother during this time. (*Id.* ¶
13   75.)
14        While A.S. was with Plaintiff's brother, DCFS social worker Jauregui took over the case.
15   (*Id.* ¶ 76.) Plaintiff's brother reported that A.S. would become upset and irritable after Jauregui
16   visited. (*Id.* ¶ 77.) Plaintiff alleges that A.S. originally wanted to go home to Plaintiff, but after
17   Jauregui started visiting, A.S. "did not want to reunite with Plaintiff" and accused "Plaintiff of
18   killing her with medications." (*Id.* ¶¶ 78-79.) Plaintiff further alleges that Defendants failed to
19   report exculpatory evidence and two psychological evaluations of A.S. that determined Plaintiff
20   "act[ed] reasonably [] in dealing with her child's mental health issues and pos[ed] no danger to her
21   child." (*Id.* ¶¶ 82, 85, 86.)
22        At the end of 2018, DCFS moved to close A.S.'s case through a detrimental filing against
23   Plaintiff. (*Id.* ¶ 74.) The juvenile proceeding was transferred from Judge Hardie to Judge Landau.
24   (*Id.* ¶ 101.) Plaintiff alleges that after the transfer of the case, Judge Hardie "made an ex-parte
25   communication with Judge Landau giving Judge Landau an impression that A.S. was doing much
26   better than she actually was." (*Id.* ¶¶ 98-102.) Plaintiff alleges that Defendants submitted a report
27   to the court showing improvements in A.S.'s condition but contends that A.S.'s medical records
28   during that period contradict the findings in Defendants' report. (*Id.* ¶ 92.) Judge Landau "closed

the case with a detrimental finding against Plaintiff, cutting off her legal and physical custody of A.S." (*Id.* ¶ 104.) Plaintiff alleges that Judge Landau's ruling was based on his ex-parte communications with Judge Hardie, as well as Defendants' misinformation and deceptive reports that concealed exculpatory evidence. (*Id.* ¶ 104.)

On June 4, 2019, Plaintiff filed a notice of appeal regarding the juvenile proceeding. On August 24, 2020, the First District Court of Appeal dismissed Plaintiff's appeal because Plaintiff did not file an opening brief. On April 24, 2021, Plaintiff filed this action, and on August 26, 2021, she filed the FAC, which is the operative complaint.

Plaintiff brings three causes of action: (1) a 42 U.S.C. section 1983 ("Section 1983") judicial deception claim for violation of her Fourteenth Amendment rights against Jauregui, Oppenheimer, and Marsh; (2) a Section 1983 retaliation claim against Jauregui, Oppenheimer, and Marsh, in violation of the First Amendment; and (3) a *Monell* claim against the County based on the alleged constitutional violations by its employees. The County, Jauregui, and Marsh move to dismiss the FAC in its entirety.[1]

**ANALYSIS**

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

---

[1] Defendant Sergio Oppenheimer has not yet been served. However, Defendants state that they advance the arguments in their motion on his behalf because Plaintiff alleges identical arguments against Oppenheimer and the County is liable for Oppenheimer's conduct in the scope of his employment.

3

1  (1986)).

2      Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

### B.    Plaintiff Fails to Allege Facts Showing Judicial Deception.

    Plaintiff alleges that Defendants violated her due process rights by limiting her access to evidence, failing to inform the court of reports that purportedly clear her of medical neglect and filing reports that misinformed Judge Landau of A.S. condition. Plaintiff alleges that these violations caused Judge Landau to terminate Plaintiff's parental rights. "[T]o prevail on a claim of judicial deception in a child abuse or custody proceeding, a plaintiff must show that '(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.'" *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) (quoting *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). "To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Spencer*, 857 F.3d at 798. Here, Plaintiff fails to allege either element.

    With regard to the first element, Plaintiff alleges that Defendants falsely stated in an April 24, 2019, report that A.S. was "thriving in the care of her father," "not on medications. . . continu[ing] to do extremely well" and "has the ability to advocate for herself." (FAC ¶ 92(a).) Plaintiff alleges that these statements are false because A.S. continued to suffer from being underweight, was performing worse academically, and continued to have psychiatric issues. (*Id*.)

Plaintiff's allegations, however, do not provide a basis for concluding that Defendants' statements about Plaintiff were false. The challenged statements represent Defendants' opinions about A.S.'s condition; they are not objective facts. Moreover, the allegations do not establish that the Defendants knew or recklessly disregarded the truth of A.S.'s condition when preparing their report. Thus, the FAC fails to establish that the statements in the report were deliberate falsehoods or constituted judicial deception.

As to the second element, the FAC provides no facts supporting the conclusory assertion that Judge Landau made the decision to terminate Plaintiff's parental rights because of the allegedly false statements in the report, none of which are relevant to Plaintiff's conduct in caring for A.S. There is nothing to suggest that Judge Landau did not properly come to an individual, legitimate determination on the merits based on the record before him. For these reasons, Plaintiff's conclusory allegations fall short of alleging a claim for judicial deception.

The Court grants Defendants' motion on this basis. However, because the Court cannot say that amendment would be futile, it grants the motion with leave to amend.

### C. Plaintiff Fails to Allege Facts Showing Retaliation.

Plaintiff alleges that DCFS workers retaliated against Plaintiff by cutting off her visitation of A.S. and limiting her access to A.S.'s medical and education records in violation of Plaintiff's First Amendment right to speak up to protect the health and welfare of her child.

To establish a First Amendment retaliation claim, a plaintiff must plead facts plausibly showing that: "(1) it engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Defendants concede for the purposes of the motion that Plaintiff's complaints to DCFS constitute protected activity and do not challenge the first element of Plaintiff's retaliation claim.

With regard to chilling effect, the inquiry is whether the alleged retaliation "would chill a person of ordinary firmness from continuing to engage in the protected activity." *O'Brien v.*

*Welty*, 818 F.3d 920, 932 (9th Cir. 2016).  Here, Plaintiff alleges that DCFS retaliated by limiting her visitation of A.S. and preventing her access to records regarding A.S.'s condition.  The threat of losing visitation of one's child is a consequence that would chill the average person from voicing criticism of official conduct.  *See Capp v. Cty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019).

However, Plaintiff has not plausibly alleged the third element—whether Plaintiff's complaints to DCFS were a "substantial or motivating factor" in DCFS's decision to limit Plaintiff's visitation of A.S.  Plaintiff includes only conclusory allegations that Plaintiff's complaints led DCFS to retaliate by barring Plaintiff from seeing A.S. or accessing certain records.  There are no factual allegations showing that the decision to limit Plaintiff's visitation rights was done in retaliation for any complaints rather than out of DCFS's legal obligation to protect A.S. from neglectful conditions.  *See id.* (requiring the plaintiff to address obvious alternative explanation for the alleged misconduct).  Thus, Plaintiff has failed to allege facts supporting the inference that DCFS was motivated by retaliatory animus.  Accordingly, the Court grants Defendants' motion on this basis with leave to amend.

**D.     Plaintiff Does Not Allege Sufficient Facts to Hold the County Liable Under *Monell*.**

Plaintiff also seeks to hold Contra Costa Country liable under the framework for municipal liability set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 657, 694 (1978).  Under *Monell*, municipal liability can be imposed only when the alleged violation of the plaintiff's rights can be attributed to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker.  *Id.* at 690-94.

A plaintiff can establish municipal liability under Section 1983 in one of three ways: (1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) the plaintiff may demonstrate that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or (3) the plaintiff may demonstrate that "an official with final

6

policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

The Ninth Circuit has made clear that *Monell* claims must comport with the pleading standards set forth in *Twombly* and *Iqbal*. *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012) (noting that *Twombly* and *Iqbal* "appl[y] to *Monell* claims and should govern future pleadings"). To support a *Monell* claim, the allegations "cannot merely state the elements of a cause of action," but instead, the "factual allegations must plausibly suggest an entitlement to relief." *Tapia Carmona v. Cty. of San Mateo*, No. 18-CV-05232-LHK, 2019 WL 4345973, at *4 (N.D. Cal. Sept. 12, 2019).

### 1. Custom, Policy, or Practice.

Plaintiff brings her *Monell* claim under a custom and practice theory. To plead a *Monell* claim under this theory, the "practice or custom must consist of more than 'random acts or isolated events' and instead, must be the result of a 'permanent and well-settled practice.'" *Parker v. City of Pittsburg*, No. 17-CV-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (internal citation omitted). The custom or practice must be "so widespread as to have the force of law." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). "[I]solated or sporadic incidents" are insufficient to support municipal liability. *Id.*

Plaintiff alleges that Contra Costa County DCFS has a custom and practice "of corner-cutting, factual fabrications, and retaliation against parents who fight back against false allegations of child abuse and neglect." (FAC ¶ 121.) She alleges that DCFS has a practice of making false allegations against parents in state dependency proceedings, concealing evidence in state dependency proceedings, and depriving parents of access to their children and exculpatory evidence." (*Id.* ¶ 124, 126-127.)

Plaintiff's allegations consist of either legal conclusions couched as fact or formulaic recitations of the elements necessary to establish a claim based on a theory of custom or practice. The FAC is devoid of specific factual allegations of widespread practices of retaliation and concealing evidence in state dependency proceedings. Nor can Plaintiff rely on her own experience with DCFS to support her *Monell* claim, which require allegations of well-settled

7

practices beyond isolated events. Additionally, Plaintiff's allegations regarding the purported criminal history of a DCFS worker has no bearing on Plaintiff's claim that DCFS has a culture of retaliation against parents.

For these reasons, Plaintiff fails to allege sufficient facts to establish a *Monell* claim based on a theory of custom or practice. The Court grants Defendants' motion on this basis with leave to amend.

### 2. Ratification.

In her opposition, Plaintiff contends that she also alleges a *Monell* claim based on a ratification theory; however, it is unclear from the allegations in the FAC that this is the case. To the extent that Plaintiff is alleging a *Monell* claim based on ratification, Plaintiff's allegations are insufficient.

To show ratification, a plaintiff must prove that an official with final policy-making authority approved a subordinate's decision or action and the basis for it. *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) (reversed in part on other grounds, *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015)). That is, a final policymaker must make a deliberate choice to endorse the subordinate's actions in order for the municipality to be liable. "The policymaker must have knowledge of the constitutional violation and actually approve of it," and a "mere failure to overrule a subordinate's actions, without more, is insufficient to support a §1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Plaintiff alleges that Marsh was the director of DCFS and had final say and control on the practices employed against Plaintiff. She further alleges that Marsh's signature is on the memos, reports, and recommendations submitted to the dependency court. However, apart from Plaintiff's claim that Marsh's signature appears on the reports, Plaintiff presents no facts to support her ratification claim. Plaintiff's conclusory allegations fail to establish a *Monell* claim based on ratification. Thus, to the extent Plaintiff alleges a ratification theory claim, that claim is dismissed.

### E. Group Pleading.

Defendants also argue that the FAC should be dismissed because it contains undifferentiated allegations against DCFS or Defendants and few allegations regarding the

8

specific acts of the individual defendants. Rule 8 requires allegations in a complaint to be specific enough to place the opposing party on notice so that they can defend themselves. However, "group pleading" is not necessarily fatal to a complaint if it still "gives defendants fair notice of claims against them." *Roberts v. Cty. of Riverside*, No. EDCV191877JGBSHKX, 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020) (quoting *Tivoli LLC v. Sankey*, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015). Plaintiff does not address this argument in her opposition. If Plaintiff chooses to amend, where possible and where needed, Plaintiff's allegations should clarify which individual defendants are responsible for the alleged harm.

## CONCLUSION

Accordingly, the Court GRANTS Defendants' motion to dismiss in its entirety WITH LEAVE TO AMEND. Any amended complaint must be submitted within twenty-one (21) days of this Order and must correct the deficiencies identified above.

**IT IS SO ORDERED.**

Dated: April 4, 2022

_____
JEFFREY S. WHITE
United States District Judge