UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SCHINDLER,<br><br>  Plaintiff,<br><br>  v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>  Defendants. | Case No. 21-cv-02984-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 56 |

Now before the Court for consideration is the motion to dismiss the second amended complaint ("SAC') filed by Defendants Contra Costa County (the "County"), Department of Children and Family Services ("DCFS") Director Kathy Marsh ("Marsh"), and DCFS social worker Anna Jauregui ("Jauregui") (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court GRANTS Defendants' motion.

**BACKGROUND**

The background of this action is set forth more fully in the Court's prior Order granting Defendants' motion to dismiss the first amended complaint ("FAC") with leave to amend. (*See* Dkt. No. 54.) Plaintiff Lisa Schindler ("Plaintiff") brings this action alleging: (1) violation of due process under the Fourteenth Amendment based on judicial deception and concealment of evidence pursuant to 42 U.S.C. section 1983 ("Section 1983") against Defendant Jauregui; (2) violation of Plaintiff's First Amendment rights pursuant to Section 1983 against Defendant Jauregui; (3) violation of due process under the Fourteenth Amendment based on judicial deception and concealment of the evidence pursuant to Section 1983 against Sergio Oppenheimer;

1  (4) violation of due process under the Fourteenth Amendment based on judicial deception and
2  concealment of evidence against Kathy Marsh; and (5) a *Monell* claim against the County for a
3  policy and practice of judicial deception, concealment of evidence, and retaliation.  The Court will
4  discuss additional facts as necessary in the analysis.

**ANALYSIS**

**A.     Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  However, documents subject to judicial notice may be considered on a motion to dismiss.  *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *Id.*  The Court may review matters that are in the public record, including pleadings, orders, and other papers filed in court.  *See id.*

1     If the allegations are insufficient to state a claim, a court should grant leave to amend
2 unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th
3 Cir. 1990); *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246-47.

4     **B.   Judicial Deception.**

5     A parent has a "due process right to be free from deliberately false statements during
6 juvenile court proceedings." *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018). "[T]he use of
7 judicial deception to obtain an order to remove a child from his or her parent's custody violates the
8 Fourteenth Amendment due process right to familial association." *Sigal v. Cty. of Los Angeles*,
9 No. 2:17-CV-04851-RGK-AGR, 2018 WL 5899636, at *4 (C.D. Cal. Jan. 17, 2018). "In order to
10 prevail on a judicial deception claim, a plaintiff must prove that (1) the defendant official
11 deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation
12 of liberty." *Keates*, 883 F.3d at 1240. The term "deliberate fabrication" encompasses both
13 statements that the official knew were false and those the official would have known were false
14 had he not recklessly disregarded the truth. *See id.* The Ninth Circuit has summarized the
15 required showing as follows: A plaintiff asserting a claim of judicial deception "must make (1) a
16 substantial showing of deliberate falsehood or reckless disregard for truth, and (2) establish that
17 but for the dishonesty, the challenged action would not have occurred." *Hart v. Cty. of Los*
18 *Angeles*, 649 F. App'x 462, 463 (9th Cir. 2016) (quotation marks and citation omitted). A claim
19 of judicial deception may not be based on statements resulting from negligence or good faith
20 mistakes, "[n]or may a claim of judicial deception be based on an officer's erroneous assumptions
21 about the evidence he has received." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir.
22 2009) (addressing claim of judicial deception in context of warrant application).

23     Plaintiff's first theory of judicial deception rests on allegations that Jauregui falsely
24 reported to the state court in the judicial dependency proceedings that A.S. was "thriving in the
25 care of her father," and "was not on any medication and has continued to do extremely well" and
26 has "the ability to advocate for herself." (SAC ¶ 118.) The Court concludes Plaintiff's judicial
27 deception claim based on this theory is again deficient.
28     As in the prior iteration of the complaint, Plaintiff's allegations are insufficient to establish

3

Jauregui lied or recklessly disregarded the truth when she reported to the court in April 2019 that A.S. was thriving in the care of her father. The allegations in the complaint establish A.S.'s history of medical issues and trauma, and thus, the logical inference from the allegations is that A.S. continued to grapple with her trauma and ongoing medical issues while living with her father. That does not establish, however, that Jauregui falsely reported or recklessly disregarded the truth in reporting to the court that A.S. was doing well in her father's care when viewed in the context of her ongoing medical and emotional needs. Thus, even accepting the truth of Plaintiff's allegations about A.S.'s condition at that time, Plaintiff has not sufficiently alleged that the falsity of Jauregui's statements regarding A.S.'s condition.

Regardless, even assuming these statements were false, Plaintiff has not alleged that but for these statements, the court's determination in the dependency proceedings would have been different. The matter before the state court was whether it should enter a detrimental finding against Plaintiff based on her failure to provide A.S. with appropriate medical care between April 2016 and March 2017. (SAC ¶ 115; *see also id.* ¶ 51.) Plaintiff fails to allege how statements about A.S.'s condition during the time she spent in DCFS custody and under the care of her father would have been relevant to the court's determination about Plaintiff's suitability to provide future care to A.S, which was the issue before the court. Accordingly, Plaintiff's judicial deception claim based on this theory fails.

Plaintiff's second theory of judicial deception appears to be based on her allegations that Jauregui failed to produce medical, psychological, and school records to the court during the judicial dependency proceedings. Plaintiff alleges that these records would have exculpated Plaintiff of the charges against her in the judicial dependency proceeding. Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the prosecution violates a defendant's due process rights if it fails to turn over evidence that is 'material either to guilt or to punishment.'" *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (quoting *Brady*, 373 U.S. at 87). It is not clear whether the *Brady* rule applies to civil child dependency proceedings, *see Clarke v. Upton*, No. CV-F-07-888OWWSMS, 2009 WL 1460815, at *18 (E.D. Cal. May 26, 2009) (collecting cases), and Plaintiff offers no authority supporting such a claim.

4

However, even assuming *Brady* applies in such proceedings, Plaintiff has failed to state a claim based upon an alleged failure to turn over exculpatory evidence. To establish a due process violation based on *Brady*, a party "must demonstrate that: (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) such evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice resulted." *Raley*, 470 F.3d at 804. Here, Plaintiff has not clearly alleged what exculpatory information Jauregui and DCFS failed to provide to the state court. Plaintiff alleges Jauregui failed to produce A.S.'s medical, psychological, and school records to the court, and the allegations suggest that the records would have revealed that A.S. was underweight, continued to suffer from constipation, was doing worse in school, and had recurring psychiatric issues. However, as discussed above, that information, even if true, does not exculpate Plaintiff of the allegations in the dependency petition that she failed to provide A.S. with appropriate medical care placing A.S. at substantial risk of harm.

Plaintiff's judicial deception claim based on this theory is also deficient because Plaintiff again fails to sufficiently allege the second prong required for a claim of judicial deception—that but for the alleged falsities, the judge would have made a different decision in the dependency proceedings. The complaint offers only conclusory allegations, but no facts, establishing that the omission of the alleged exculpatory evidence caused the judge's decision to enter a detrimental finding against Plaintiff. It is not enough to allege that the allegedly false or omitted evidence "could have contributed" to the judicial officer's decision; rather Plaintiff must establish but-for causation. Plaintiff has failed to do so here. Accordingly, to the extent Plaintiff's claim fails to the extent it is based on the failure to provide the dependency court with records containing allegedly exculpatory information.

Plaintiff also alleges judicial deception claims against Sergio Oppenheimer and Kathy Marsh based on supervisory liability. Under Section 1983, a supervisor can be held liable in his or her individual capacity "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). Plaintiff's supervisory liability allegations against Oppenheimer and Marsh are

5

conclusory. Plaintiff fails to allege specific facts that would support a plausible inference that either Oppenheimer or Marsh was personally involved in the alleged incident or that there was a causal connection between Jauregui's conduct and the conduct of either supervisor. Accordingly, the judicial deception claims against Oppenheimer and Marsh based on supervisory liability are dismissed.[1]

For these reasons, the Court dismisses Plaintiff's judicial deception claims.

**C.    Retaliation.**

Plaintiff asserts a first amendment retaliation claim against Jauregui. The Court previously dismissed the retaliation claim because Plaintiff failed to plausibly allege that her complaints to Jauregui were a substantial or motivating factor in Jauregui's decision to eliminate Plaintiff's visitation rights. The Court determined that Plaintiff's conclusory allegations of retaliation were insufficient to establish Jauregui sought to eliminate Plaintiff's visitation rights out of retaliation rather than out of its legal obligation to protect A.S. from neglectful conditions. *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019).

As the Court stated in its prior Order, to establish a First Amendment retaliation claim, a plaintiff must plead facts plausibly showing that: "(1) it engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). The Ninth Circuit has held that because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

In *Capp*, the plaintiff alleged that a social worker coerced the mother of his children to file for sole custody of his children in retaliation for his criticism of the child protection agency's handling of child abuse allegations against him. *See* 940 F.3d at 1051-52. The Ninth Circuit held

---

[1] Plaintiff's claims against Oppenheimer are subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m) for the independent reason that Oppenheimer has yet to be served.

the plaintiff sufficiently alleged a retaliation claim. *Id.* at 1056-58. The Ninth Circuit explained that while there was some reason to infer that the social worker was "at least partially motivated by her legal obligations to protect the children," the plaintiff also alleged that (1) the agency lacked any serious basis to believe that the plaintiff posed a safety concern for the children, and (2) the social worker had treated the plaintiff differently from the children's mother, despite the fact that the agency had basis to believe the mother posed a similar risk of harm to the children (*i.e.*, differential treatment). *Id.* at 1057. Thus, although it was "likely to be a very close case," the plaintiff had sufficiently alleged the social worker's retaliatory animus was a "but-for" cause. *Id.*

Plaintiff alleges that when she saw evidence that her daughter suffered trauma and abuse under the care and custody of DCFS, she complained to Jauregui. She also alleges she continued to defend herself against false allegations of neglect throughout the pendency of the dependency court proceedings. Plaintiff alleges that in response to her complaints that A.S. was abused and neglected while in the custody of DCFS, Jauregui retaliated by cutting off Plaintiff's visitation rights and her access to A.S.'s records for the purpose of moving the dependency court for a detrimental finding against Plaintiff.

Here, unlike in *Capp*, the complaint establishes several substantiated bases for Jauregui's concern about Plaintiff visitation rights. The court had already determined Plaintiff had failed to provide adequate medical care for A.S. from April 2016 through March 2017, which placed A.S. at substantial risk of harm and thus, ordered A.S. into the immediate custody of DCFS. (SAC ¶ 52.) Additionally, Plaintiff alleges A.S. wrote a letter in which she asked Plaintiff to leave her alone for at least year to give her time to recover. (*Id.* ¶ 108.) Thus, rather than alleging Jauregui lacked any serious basis to believe Plaintiff posed a risk to A.S.'s health and safety, the allegations show Jauregui had reason to believe that allowing Plaintiff to visit A.S. could cause A.S. harm.[2] Plaintiff also has not alleged any differential treatment. Thus, the elements that persuaded the Ninth Circuit to find the allegations of retaliatory animus sufficient in *Capp* are not present here.

---

[2] Plaintiff also fails to clearly allege whether her visitation rights were limited by Court order or by Jauregui's unilateral action without court authorization. To the extent the visitation rights were limited by court order, that would provide a substantial basis for limiting the visitation rights.

Nor has Plaintiff alleged a chronology of events that supports an inference of retaliation. *See Watison*, 668 F.3d at 1114. Plaintiff does not clearly allege when her visitation rights were limited, but the allegations suggest it happened in early 2018 while A.S. was living with her uncle.[3] (*See* SAC ¶ 78, 103.) During this time, A.S. herself wrote a letter requesting that Plaintiff leave her alone for a year. (SAC ¶ 108.) Thus, the chronology of events alleged by Plaintiff does not support the conclusion that Jauregui's decision to limit Plaintiff's visitation rights in 2018 was done to retaliate against Plaintiff for her complaints against DCFS rather than out of concern for A.S.'s health and safety. Indeed, Plaintiff alleges she had been complaining about and defending herself against DCFS's false claims of abuse and neglect throughout A.S.'s detention and the dependency proceedings, which began in 2017, well before her visitation rights and access to records were allegedly terminated. (*See id.* ¶ 149.) Thus, Plaintiff fails to state a cognizable First Amendment retaliation claim. The Court grants the motion to dismiss this claim.

**D.** *Monell* **Liability.**

Plaintiff's fifth claim for relief is a *Monell* claim against the County for judicial deception and retaliation. Plaintiff alleges that the County has a policy and practice of retaliating against parents who make complaints by making false allegations against those parents in state dependency proceedings.

"A government entity may not be held liable under Section 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Id.* (citation omitted).

---

[3] In her amended opposition brief, Plaintiff asserts that Defendants cut off Plaintiff's visits and access to A.S.'s medical and education records around the middle of 2018. This fact is not alleged in the complaint.

8

Under Section 1983, a municipality may be held liable based on an unconstitutional policy even where it is not an express municipal policy that has been formally adopted. In particular, a municipality may be held liable on the basis of an unconstitutional policy if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1988) *overruled on other grounds by Bull v. City and Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); *see Praprotnik*, 485 U.S. at 127. Thus, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy..." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). To withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits." *Warner v. County of San Diego*, No. 10-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb.14, 2011).

As with the prior iterations of the complaint, the allegations in the SAC are again insufficient to plead a custom, practice, or policy by the County that caused Plaintiff's injuries. Plaintiff challenges the County's allegedly unconstitutional policy and practice of "corner-cutting, factual fabrications, and retaliation against parents who fight back against false allegations of child abuse and neglect," and practice and custom of "making false allegations against parents in state dependency proceedings to further their goal of family separation," "covering up their mistakes and concealing evidence in state dependency proceedings," and "depriving parents of access to their children and exculpatory evidence." (*See* SAC ¶¶ 183, 186, 198-99.) However, the only factual allegations supporting these alleged practices are those specific to Plaintiff and A.S. Plaintiff's new allegations regarding prior instances where DCFS failed to act appropriately relate to investigations of child abuse and placement in unsafe foster homes and are not relevant to the

9

policy and practice at issue here. (*See id.* ¶¶ 189-197.) "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Even with the opportunity to amend, Plaintiff fails to allege facts supporting the claim that the County has a policy and practice of fabricating allegations against parents and concealing exculpatory evidence in judicial dependency proceedings.

Plaintiff also alleges a *Monell* claim based on ratification. The Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who causes the constitutional violation." *Trevino*, 99 F.3d at 920. Ratification "generally requires more than acquiescence." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015). Plaintiff alleges that Kathy Marsh, the director of DCFS had final control over the policies and practices employed against Plaintiff and that her signature was on "every report, memo, and recommendation submitted to the dependency court," and knew of all the unconstitutional customs and practices but did nothing to address them. (SAC ¶¶ 207-208.) These allegations ratification are again vague and generalized and lack sufficient factual support to state a *Monell* claim based on a theory of ratification. Plaintiff's ratification claim fails.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. The Court concludes it would be futile to grant other opportunity to amend and dismisses Plaintiff's claims without leave to amend. A separate judgment shall issue, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 8, 2023

_____
JEFFREY S. WHITE
United States District Judge